NELSON, Appellant, vs. CITY OF SUPERIOR, Respondent.

*February 28 — March 19, 1901.*

*Municipal corporations: Superior city charter: Firemen are "officers:"
Salary: Change during term: Agreement to accept less than legal
salary: Estoppel: Appeal: Record.*

1. Firemen being expressly included by the city charter of Superior
   (Laws of 1891, ch. 124, secs. 11, 21) among the appointive "officers"
   of the city, their salaries are governed by the provisions of sec. 15
   of the charter, to the effect that every officer of the city, with cer-
   tain exceptions, shall be paid an annual salary; that the common
   council in the month of March shall fix the salary of every such
   officer who may be elected or appointed during the ensuing year;
   and that the salary of an officer so fixed shall not be increased or
   diminished during his term of office.
2. The salary of a public officer is not a matter that can be fixed by
   contract, either before or after the term commences, but is an in-
   cident of the office, and the incumbent thereof has the same title
   to the salary that he has to the office.
3. Where the law prohibits a municipality from changing the compen-
   sation of an officer during his term of office, he will not be es-
   topped, by signing an agreement to accept a less amount in con-
   sideration of being retained in office, and by accepting the amount
   so stipulated for his services, from recovering the balance of his
   legal salary.
4. To warrant this court in reversing a judgment which denies the
   right of an officer to recover as salary any sum in addition to what
   he had received and accepted, it must appear from the record
   what salary he was legally entitled to. And where the law re-
   quired that his salary be fixed by the common council at a certain
   time, a showing that it was fixed by the council at another time is
   insufficient, such action of the council being illegal.

APPEAL from a judgment of the circuit court for Douglas
county: JAMES O'NEILL, Judge. *Affirmed.*

Action to recover a balance said to be due plaintiff from
defendant for services rendered as a fireman. The cause
was tried by the court. The evidence disclosed, without dis-
pute, the following:

From 1893 to May 1, 1897, plaintiff was a fireman for de-
fendant city, by appointment by the common council thereof.

Nelson vs. City of Superior.

In February, 1896, such council passed an ordinance in form fixing the salaries of all officers and employees of the city for the ensuing year, that of plaintiff being named at $65 per month. September 29, 1896, the council, by resolution, determined to reduce the compensation of the employees in the police and fire departments of the city and to decrease the monthly pay roll of the fire department to $1,500 per month, either by reducing the rate of wages or the number of employees, or both. When the resolution was adopted, and as a part of the proceedings, the mayor of the city was requested to call before him all the men on the police force and in the fire department of the city and acquaint them with the nature of the resolution reducing their compensation and to request them to sign an agreement providing that in consideration of their further employment they would accept as full compensation for future services the wages fixed in accordance with said resolution. September 30, 1896, pursuant to such determination and request, the mayor called before him the policemen and firemen of the city, at which time plaintiff signed the following agreement:

"Whereas, the city of *Superior*, owing to the lack of money in its treasury, has found it necessary to curtail and lessen its expenses and for that purpose the common council of said city has, by resolution, passed September 29th, 1896, provided, among other things, that the monthly pay roll of the fire department of said city be reduced to $1,500 per month, said reduction to be effected by reducing the number of men employed in said department or the rate of wages paid, or both, and desiring to be continued in the employ of said city in said department; now, therefore, the undersigned severally and each for himself proposes and offers that in consideration of being retained in the service of said city in said department, I will accept and receive as full compensation for such services from and after October 1st, 1896, per month the sum set opposite my respective name. It being understood that my acceptance of the reduced rate of wages as herein provided does not insure my continued retention in such service or in any way affect the right of the mayor of said city to discharge me at any time."

Nelson vs. City of Superior.

The sum set opposite plaintiff's name was $42. Thereafter from and inclusive of October, 1896, to and inclusive of February, 1897, he received $42 per month, and for the two following months $60 per month.

On such facts the trial court decided that, notwithstanding the charter of the defendant required the common council, in the month of March each year, to fix the amount of salary incident to every city salaried office, whether elective or appointive, for the ensuing year, and prohibited such council from changing any salary so fixed for such year, plaintiff was not entitled to recover more than the amount he had received, because he was not an officer within the meaning of the charter, but was a mere employee; that his salary was legally reduced by the action of the common council on the 29th day of September, 1899; that he had no fixed term of office, and was subject to be discharged at the pleasure of the mayor, and that by signing and fully executing the agreement to receive $42 per month for his services as full compensation therefor, he was estopped from claiming any additional amount. Judgment was rendered pursuant to such decision, dismissing the action, and for costs in favor of defendant.

For the appellant the cause was submitted on the brief of *Crownhart & Foley.*

For the respondent there was a brief by *Archibald McKay* and *Geo. B. Hudnall,* and oral argument by *Mr. Hudnall.*

MARSHALL, J. Was appellant an officer of the city of *Superior* within the meaning of its charter, ch. 124, Laws of 1891? It seems to have been overlooked that such question must be tested by the charter, and that it was decided on general principles governing who is an officer and who an employee of a municipality. If the same line could be followed here, support could be easily found for the conclusion

of the trial court, but it cannot, since the charter unmistakably includes firemen among the appointive city officers. That appears by implication by sec. 9, and expressly by secs. 11 and 21.[1] By sec. 13, the term of all officers of the city is fixed at " one, two or three years respectively, as herein provided, and until their respective successors are elected or appointed and qualified." By sec. 11, the power of appointment of firemen is placed with the mayor, as is also the power of removal at his pleasure by sec. 21. Sec. 15 — following sec. 11 which recognizes firemen as officers, and sec. 13 fixing the term of office of all officers — provides that every officer of the city, except supervisors, aldermen, school commissioners, justices of the peace, and constables, shall be paid an annual salary, and that the common council, in the month of March, shall fix the amount of salary that shall be received by every city officer entitled to a salary, who may be elected or appointed in the city during the ensuing year, which salary shall not be increased or diminished during the term of office for which said officer may be elected or appointed.

The conclusion must follow that appellant was a city officer and entitled to the salary, regularly fixed, which was an incident to his office at the commencement of his term, unless his agreement to take a different salary concluded

[1] Sec. 9 provides that " the officers of the city shall be the mayor and two aldermen from each ward, constituting the common council, a treasurer, clerk," etc., etc., "and such other officers as the common council may deem necessary." Sec. 11 provides that the mayor, treasurer, etc., shall be elected by the people; that "the other officers shall be appointed by the mayor and confirmed" by the common council, "except watchmen, policemen and firemen, who shall take their appointment direct from the mayor without confirmation." Sec. 21 provides that "every officer elected or appointed to any office, except watchmen, policemen and firemen, may be removed from such office by a vote of three fourths of all the members of the common council; but no such officer, except watchmen, policemen and firemen, shall be removed without cause," etc.— REP.

him. The attempt of the common council to fix the salary in February instead of March, and to change it during appellant's term, was clearly usurpation of power and void.

The authorities are uniform to the effect that in the absence of authority conferred by statute the salary incident to an office cannot be legally changed during an officer's term, so as to compel him to take less than the salary incident thereto when he entered upon its duties. The salary to be paid to a public officer is not a matter to be fixed by contract, or that can be so fixed, either before or after the term commences. It is an incident of the office, and an incumbent thereof has the same title thereto as he has to the office. A municipality governed by a charter like that of respondent can no more make the salary of an officer a matter of contract than it can make the office itself such a matter. It cannot omit to elect a person to fill an office and then contract with some person to perform its duties. No one would claim that; yet it is just as plain that it cannot fill an office and make the compensation for performance of its duties a matter of contract. This court very recently passed upon the question involved. *Rettinghouse v. Ashland*, 106 Wis. 595. The authorities to that effect are numerous. The following are but a small part of them: *People ex rel. Satterlee v. Board of Police*, 75 N. Y. 38; *People ex rel. Ryan v. French*, 91 N. Y. 265; *Kehn v. State*, 93 N. Y. 291; *Clark v. State*, 142 N. Y. 101; *State ex rel. Kercheval v. Mayor of Nashville*, 15 Lea, 697; *Dyer v. U. S.* 20 Ct. Cl. 166; *Montague's Adm'r v. Massey*, 76 Va. 307; *Larew v. Newman*, 81 Cal. 588; *Scholfield v. U. S.* 32 Fed. Rep. 576; *Stocksdale v. U. S.* 39 Fed. Rep. 62; *Bowe v. St. Paul*, 70 Minn. 341.

Having reached the conclusion that appellant was a city officer and entitled to the salary incident to his office at the time his term commenced, the next question is, Did he estop himself by signing the contract, so called, and accepting the

amount stipulated therein for his services, from claiming any additional amount, notwithstanding it was less than his legal salary? There are authorities to sustain the affirmative of that proposition. *Hobbs v. Yonkers*, 102 N. Y. 13; *De Boest v. Gambell*, 35 Oreg. 368; *Brauer v. Portland*, 35 Oreg. 471; *McInery v. Galveston*, 58 Tex. 334; *O'Hara v. Park River*, 1 N. Dak. 279. The learned trial court seems to have been guided by those cases, but they hardly fit the facts of this case. In each there was an agreement between the municipality and the officer, to take less than the legal salary, made before he entered upon his term of office, or the legal salary was illegally reduced before he took possession of the office, and he received the same by express agreement afterwards. So if we were to approve the rule, that would not necessarily lead to a reversal in this case. It is one thing to agree with an officer before he enters upon his term of office, as to the compensation he shall receive, and quite another to hold over him, while in office, the menace of a removal therefrom unless he consents to a reduction of his legal salary, and by that means induce him to consent to such a reduction. It is difficult to see how such a proceeding could properly receive judicial indorsement. It is unnecessary to discuss here the mischiefs that might flow from such a system. That they are numerous and serious, as regards purity in municipal government, will occur to any sensible man of ordinary experience in public affairs, by a moment's reflection. That is sufficient to condemn, on grounds of public policy, in a court of justice, any attempt to invoke such a transaction to preclude an officer, forced to become a party thereto, from being bound thereby on the ground of estoppel. The foundation principle of estoppel is justice. Where there is no element of justice there can be no element of estoppel that can be enforced by the courts.

Independent of the foregoing, the better rule is that where the law, as in this case, prohibits a municipality from meddling, during an officer's term of office, with the compensation he shall receive for his services, the doctrine of estoppel cannot be invoked to thwart it; and that is the rule that has been adopted in this state. *Clarke v. Milwaukee Co.* 53 Wis. 65; *Rettinghouse v. Ashland,* 106 Wis. 595.

Notwithstanding the conclusions reached, there is yet an insuperable difficulty in granting appellant relief from the judgment appealed from. That grows out of the fact that we are not informed by the record as to what salary appellant was legally entitled to. We cannot infer that the salary fixed in February was either more or less than the salary incident to the office when appellant entered upon his duties, or that the amount he received is either more or less than the legal amount. We have no information on the subject. For aught that appears, while appellant was compelled to take less than $65 per month, he may have received more than the legal salary. It stands conceded that the action of the common council in February was illegal, as the charter expressly required the salary to be fixed in March preceding the commencement of the term. This situation is unfortunate for appellant if $42 per month is less than his legal salary, but it is a misfortune that this court is powerless to relieve him from. If there were a bill of exceptions showing what the legal salary was, or if there were a finding of fact on the subject, the situation would be different. As the case stands we must affirm the judgment.

*By the Court.*— The judgment is affirmed.